FILED
 2016 Feb-16  PM 02:13
 U.S. DISTRICT COURT
    N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **JENNIFER CHERI THOMPSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 5:14-CV-2178-** |
| ) | **KOB** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of the** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On October 10, 2011, the claimant, Jennifer Thompson, protectively applied for Social Security Disability and Supplemental Security Income benefits under Title II of the Social Security Act. (R. 157–71). The claimant alleged disability commencing on June 15, 2011, because of major depression, anxiety disorder, mild degenerative disk disease in the thoracic spine, moderate spondylitis and degenerative arthritis of the lumbar and thoracic spine, weakness of the right upper extremity of undeterminable etiology, and obesity. (R. 17). The Commissioner denied the claim on March 7, 2012, and the ALJ held a hearing on February 27, 2013. (R. 18).

In a decision dated April 24, 2013, the ALJ found that the claimant was not disabled as defined by the Social Security Act and was, therefore, ineligible for social security benefits. (R. 17). On September 10, 2014, the Appeals Council denied the claimant's request for review. Consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1–3). The claimant has exhausted her administrative remedies, and

1

this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court AFFIRMS the decision of the Commissioner.

## II. ISSUES PRESENTED

The claimant presents the following issues for review: (1) whether the ALJ accorded proper weight to the opinions of the Alabama Department of Rehabilitation Services counselor; and (2) whether the ALJ failed to develop the record by not recontacting sources or obtaining a consultative examination or medical expert opinion on the claimant's disability status.

## III. STANDARD OF REVIEW

The standard of review of the Commissioner's decision is a limited one.  This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if substantial evidence supports his factual conclusions.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 401 U.S. 389, 401 (1971).

"The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors 'are not medical opinions, . . . but are, instead opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d). Whether the claimant meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395   F.3d 1206,

1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as substantial evidence in the record supports it.

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

Absent a good showing of cause to the contrary, the ALJ must accord substantial or considerable weight to the opinions of treating physicians. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The ALJ must credit the opinions of treating physicians over those of consulting physicians unless good cause exists for treating the opinions differently. *Lewis v. Callahan*, 125 F.3d 1436, 1440-41 (11th Cir. 1997). Good cause exists to discredit a treating physician's opinion when it is not accompanied by objective medical evidence, is inconsistent with the medical record, is wholly conclusory, or the evidence supports a contrary finding. *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x. 403, 407 (11th Cir. 2010); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004).

Additionally, an ALJ may consider the examiner's relationship with the claimant and whether the physician's medical opinion is consistent with the doctor's specialization or expertise. *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 818–19 (11th Cir. 2011); *Heppell-Libsansky v. Comm'r of Soc. Sec.*, 170 F. App'x. 693, 697 (11th Cir. 2006). Further, medical opinions regarding the ultimate issue of disability are reserved for the Commissioner and are not entitled to any special consideration. *Kelly*, 401 F.App'x. at 407. Where the ALJ articulates specific reasons for failing to give the opinion of a treating physician controlling weight and those reasons are supported by substantial evidence, the ALJ commits no reversible error. *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005).

Although an ALJ "has a basic obligation to develop a full and fair record, . . . there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record." *Graham*, 129 F.3d at 1423. Such a showing of prejudice may be present where the record is clearly incomplete or inadequate. *Id.* However, the ALJ does not err in denying a

4

request for additional medical evidence if substantial evidence supports the ALJ's decision. *Holladay v. Bowen*, 848 F.2d 1206, 1209–10 (11th Cir. 1988); *see also Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984).

## V. FACTS

The claimant was forty years old at the time of the ALJ's final decision. The claimant has a high school education and past relevant work as a cashier, delivery driver, small parts assembler, office manager, and industrial cleaner. The claimant alleges disability based on major depression, anxiety disorder, mild degenerative disk disease in the thoracic spine, moderate spondylitis and degenerative arthritis of the lumbar and thoracic spine, weakness of the right upper extremity of undeterminable etiology, and obesity. (R. 17).

*Physical Limitations*

From June 8, 2010 until November 23, 2011, the claimant visited Athens Family Care for treatment of multiple impairments, including failed back surgery, right shoulder arthritis, migraine headaches, anemia, and restless leg syndrome. However, the ALJ noted that the record contains no documentation of treatment for these impairments since November 23, 2011, which in the ALJ's opinion strongly suggests the claimant no longer suffered from significant symptoms related to these impairments. (R. 18).[1]

On February 21, 2012, Dr. Amit Vora examined the claimant. Dr. Vora's examination indicated that the claimant had pain in her upper back, as well as in her right shoulder, allegedly resulting from a failed thoracic spine surgery. Dr. Vora noted that the claimant likely suffers

---

[1] Although the administrative record contains the claimant's previous denial of disability for similar impairments, because this Social Security Disability application applies to later onset date for those impairments, the ALJ does not rely on any previous evidence of the claimant's disabilities not contained in the current record.

from degenerative disc disease throughout the spine, in the thoracic lumbar area, spondylosis, and obesity. Although the claimant complained that she sustained a stroke, she reported having recovered 70% since the incident. Nevertheless, Dr. Vora noted some weakness in the right upper arm and right handgrip. (R. 489–92).

*Mental Limitations*

On January 5, 2007, the claimant was admitted to Decatur General Hospital after threatening to kill herself. The claimant's symptoms at the time were sleepiness, decreased energy, poor concentration and appetite, as well as a general feeling of hopelessness. Doctors diagnosed the claimant with major depressive disorder and anxiety disorder, and treated and monitored her for four days. The hospital discharged the claimant on January 9, 2007, after Dr. Fredette noted "[the claimant] felt like she was safe and ready to go home." (R. 279–84).

A year and a half later, the claimant again sought mental health treatment. From July 1, 2008 to July 8, 2008, doctors at Decatur General Hospital treated the claimant for worsening depression. After treatment and signs of "significant improvement," the doctors discharged the claimant. However, the claimant returned on July 28, 2008, after overdosing on Xanax. One doctor reflected that the claimant's suicidal ideations were a reaction to a change in her medication. After three days of monitoring in which she showed gradual improvement, doctors discharged the claimant with instructions for follow-up treatment. (R. 250–56).

On October 14, 2008, Dr. Jack L. Bentley, Jr., conducted a psychological exam of the claimant at the request of Dr. Moore, a disability specialist, which showed the claimant's mood was moderately dysphoric and congruent with her affect and that she was mildly anxious. In his report, Dr. Bentley noted several characteristics of the claimant, including that she did not exhibit any difficulties in her receptive or expressive communication skills and reported frequent

and intermittent flashbacks of traumatic events in her life. Further, the claimant stated that she attends church, and has friends with whom she socializes. In addition, the claimant reads, watches television, cares for her children, and takes care of her personal needs without assistance. Accordingly, Dr. Bentley diagnosed her with post-traumatic stress disorder and depression. (R. 288–92).

On March 26, 2009, the claimant was again hospitalized for depression with suicidal ideation and insomnia. A drug test indicated signs of foreign substances not prescribed to her by her primary care physician. However, again, with treatment and monitoring, the hospital discharged the claimant because her condition had improved, and she no longer was suicidal. (R. 292–303).

On December 14, 2011, Marilyn McBryde, an Alabama Department of Rehabilitation Services ITE counselor, conducted an evaluation of the claimant in anticipation of her Social Security Disability claim. In her one-page evaluation, the counselor listed the claimant's alleged disabilities, including some that have not appeared in the medical record. The counselor noted the claimant suffered from depressive disorder, anxiety disorder, alcohol abuse, mathematics disorder, personality disorder, osteoarthritis, restless leg syndrome, migraines, and obesity. Then, with no explanation for the basis of her opinion, the counselor stated: "[the claimant's] medical documentation confirms her disability and . . . recommends (sic) that she pursues disability because her disability is too severe and she demonstrated no work potential." (R. 229).

On January 30, 2012, Dr. John R. Haney, a licensed psychologist, conducted a second clinical evaluation of the claimant at the request of the Disability Determination Service (DDS). In Dr. Haney's evaluation, he noted the claimant's physical and mental impairments, her prescribed medications, his perception of the claimant's cognitive abilities, and the claimant's

daily routine. Finally, Dr. Haney noted the claimant's "[a]bility to function in most jobs appeared moderately to severely impaired due to physical and emotional limitations." (R. 486–87).

Then on March 7, 2012, Dr. Darnell Wilson, a State agency medical consultant, conducted a third disability evaluation of the claimant. The ALJ noted that, although Dr. Wilson had never treated or examined the claimant, Dr. Wilson made findings of fact concerning the claimant's medical condition and analyzed the claimant's medical record. Nevertheless, Dr. Wilson concluded his evaluation in making a determination that the claimant is "NOT DISABLED." (R. 70–83).

*The ALJ's Hearing*

After the Commissioner denied the claimant's request for disability insurance benefits, she requested and received a hearing before an ALJ on February 27, 2013. (R. 29–42). At the hearing, Ms. Martha Daniel, a vocational expert, testified that the claimant had previously worked as a cashier, delivery driver, small parts assembler, office manager, and industrial cleaner. (R. 36). Claimant worked after her alleged disability onset date, but the ALJ determined that this work did not constitute substantial gainful activity because the claimant's earnings fell below regulatory standards. The claimant testified that her last job was janitorial in nature, but that she was only able to work for four months because she "couldn't hold up to it." (R. 35).

Although the claimant did not have a regular or part-time job, the claimant testified that with a cane she is able to stand for two hours at a time, fold a load of laundry, and drive a car. (R. 33, 36, 37). The claimant also testified that, as a result of weakness on the right side of her body, she frequently has trouble lifting things. (R. 36–37). When asked whether she could pick up a pen every two or three minutes all day, moving it back and forth, the claimant responded, "No."

The claimant smokes a pack of cigarettes a day.

Ms. Daniel testified at the claimant's hearing concerning the type and availability of jobs that the claimant was able to perform. Ms. Daniel testified that the claimant's past relevant work included a cashier, which is classified as light exertion with a specific vocational preparation (SVP); a delivery driver, which is classified as medium exertion, performed at heavy according to the record; a small part assembler, which is classified as light exertion with a SVP; an office manager, which is classified as light exertion with a SVP; and an industrial cleaner, which is classified as medium exertion with a SVP. (R. 36).

The ALJ asked Ms. Daniel to assume that the claimant could perform a reduced rate of light work; would not be able to climb scaffolds, ropes or ladders; could frequently climb stairs and ramps; frequently balance, stoop, kneel, crouch and crawl; must avoid working at unprotected heights or around dangerous machinery; could occasionally use her right dominant hand for fingering, feeling and handling and constantly use her left hand for fingering, feeling and handling; could perform unskilled work with no more than three-step procedures; and could have occasional interaction with coworkers and supervisors and rare interaction with the general public. Ms. Daniel stated that a person with these limitations could not perform any of the claimant's past relevant work, but that she could perform at least three jobs, including ticket marker, with 3,000 jobs in the region and 200,000 nationally; garment sorter, with 2,000 jobs in the region and 125,000 nationally; and inspector, with 5,000 jobs in the region and 200,000 nationally; all of which exist in substantial numbers in the national economy. (R. 23, 39–40).

*The ALJ's Decision*

On April 24, 2013, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act. (R. 12). First, the ALJ found that the claimant met the insured status

9

requirements of the Social Security Act through June 30, 2012, and has not engaged in substantial gainful activity since her alleged onset date of June 15, 2011. (R. 17).

Next, the ALJ found that the claimant has severe impairments of anxiety, major depressive disorder, mild degenerative disk disease (DDD) in the thoracic spine, moderate spondylitis and degenerative arthritis of the lumbar and thoracic spine, weakness of the right upper extremity of undeterminable etiology, and obesity. (R. 17). Additionally, the ALJ noted impairments resulting from claimant's alleged stroke with residual weakness, post-traumatic stress disorder, and a frozen shoulder. However, because the record is void of any objective medical documentation of those impairments, the ALJ found them to be not medically determinable. The claimant also alleges impairments resulting from a failed back surgery, right shoulder arthritis, migraine headaches, anemia, and restless leg syndrome. However, again, because little to no documentation exists concerning the treatment of these impairments, the ALJ found them to be non-severe. (R. 17–18).

The ALJ next found that the claimant does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.925, and 416.926). Regarding claimant's physical impairments, the ALJ considered whether the claimant met the criteria listing 1.02 concerning major dysfunction of joints. The ALJ determined that the claimant did not meet these requirements because "there is no evidence of major dysfunction of weight bearing joint resulting in the inability to ambulate effectively or involvement of an upper extremity resulting in the inability to perform fine and gross movements effectively." (R. 18). The ALJ further determined that the claimant did not meet the criteria listing under 1.04 for disorders of the spine because "there is no evidence of nerve root

compression with weakness and sensory or reflex loss, spinal arachnoiditis, or lumbar spinal stenosis resulting in the inability to ambulate effectively." (R. 19).

Regarding the claimant's mental impairments, the ALJ determined that the claimant did not meet the criteria listing under 12.04 and 12.06, specifically whether the impairments fell under "paragraph B" criteria. The ALJ considered the claimant's ability to take care of her personal needs, take care of her daughter, cook, grocery shop, watch TV, read, pay bills, count change, handle a savings and checking account, talk on the phone, and visit with friends daily and determined that the claimant's mental impairments resulted in no more than moderate restrictions, as opposed to marked restrictions, with no repeated episodes of decompensation of extended duration. (R. 19).

Next, the ALJ determined that the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations: can never climb scaffolds, ropes, or ladders; can frequently climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; should avoid unprotected heights or hazardous and moving machinery; can occasionally use the right dominate hand for fingering, feeling, and handling, and constantly use the left hand for fingering, feeling, and handling; and can perform unskilled work that requires no more than 3-step procedures with occasional interaction with co-workers and supervisors, and rare interaction with the general public. (R. 20).

In making this finding, the ALJ considered the claimant's symptoms and corresponding medical record. The ALJ concluded that, although the claimant's medically determinable impairments could reasonably be expected to cause symptoms, the claimant's allegations regarding the intensity, persistence, and limiting effects of these symptoms were not consistent with the evidence. First, the ALJ noted that the claimant's allegations of her disabling symptoms

were inconsistent with the medical record; namely, although she had several hospitalizations due to depression and anxiety, she has not been hospitalized for psychiatric impairments since March 26, 2009. (R. 21; 292–303). Moreover, because the claimant testified that she was able to take care of herself and her child, go grocery shopping, and visit with friends, the ALJ noted that the claimant was not suffering from such severe symptoms as to prevent her from interacting with the public. Consequently, the ALJ determined that the claimant's subjective allegations of her symptoms and abilities were not entirely credible. (R. 20–21).

Next, the ALJ discounted the claimant's alleged physical impairments. Although the claimant alleged migraine headaches and restless leg syndrome, the ALJ could find no medical evidence of these symptoms or disorders in the record. Further, although a June 2011 MRI of the claimant's thoracic spine showed mild degenerative disk changes at T7-8, the ALJ noted that the claimant had not sought treatment for this impairment since November 23, 2011, which the ALJ understood to mean the claimant no longer suffered from its symptoms. Further, the ALJ pointed out that Dr. Vora's notation indicating the claimant maintained 4/5 strength of the right upper extremity and only moderate weakness of right hand grip contradicted the claimant's complaints of her shoulder and right arm weakness. Finally, the ALJ found that the claimant's daily activities, including taking care of herself and her daughter, cooking, cleaning, going grocery shopping, watching TV, reading, visiting with friends and balancing her savings and checking accounts, directly contradicted the claimant's alleged impairments. Accordingly, the ALJ determined that her physical impairments were inconsistent with the objective medical record. (R. 21–22).

The ALJ first gave little weight to the State agency medical consultant Dr. Wilson's opinion because he never treated or examined the claimant, nor had an opportunity to review her

medical file. Further, the ALJ gave little weight to Dr. Haney, the claimant's psychologist, because he had no expertise in treating physical impairments. Lastly, the ALJ gave little weight to Dr. McBryde, the Alabama Department of Rehabilitation Services counselor, because the counselor has no known medical expertise nor any supporting documentation to suggest the Services counselor could surmise medical judgment over the claimant. (R. 22).

Finally, the ALJ found that the claimant was unable to perform any past relevant work as a cashier, delivery driver, small parts assembler, office manager, or industrial cleaner. However, the ALJ concluded that considering the claimant's age, education, work experience, and residual functional capacity, the claimant is able to perform to job of a ticket market, garment sorter, and inspector, all of which exist in significant numbers in the national economy. Thus, the ALJ determined the claimant was not disabled. (R. 23–24).

## V1. DISCUSSION

The claimant argues that the ALJ erred in rejecting the medical opinion of the Alabama Department of Rehabilitation Services counselor and in failing to develop the record by recontacting any of the claimant's physicians or obtaining a consultative examination or medical expert opinion. However, this court finds that the ALJ applied the proper legal standards and that substantial evidence supports the ALJ's decision.

*Issue 1: The ALJ's Assessment of the Alabama Department of Rehabilitation Services counselor*

The claimant argues that the ALJ improperly rejected the medical opinion of a state agency doctor regarding the claimant's limitations. Specifically, the claimant argues that the state agency doctor's opinion has evidentiary value to which the Commissioner is obligated to give substantial weight in its vocational evaluation. The claimant further argues that the state agency doctor's opinion is necessary to paint the whole picture of the claimant's limitations. To the

13

contrary, this court finds the ALJ properly discredited the state agency doctor's opinion and that the ALJ's decision is supported by substantial evidence in the medical record.

Medical opinions regarding the ultimate decision of a claimant's disability are not entitled to any special significance. *Kelly*, 401 F.App'x. at 407. In this case, the Alabama Department of Rehabilitations Services counselor's opinion concerned *only* whether the claimant was disabled. The counselor's opinion states, "Ms. Thompson's medical documentation confirms her disability and . . . recommends [sic] that she pursues disability because her disability is too severe and she demonstrated no work potential." (R. 229). However, because such decisions regarding disability are reserved for the ALJ, the ALJ's decision to give the counselor's opinion little weight was proper.

Additionally, the claimant seems to argue that by discrediting the counselor's opinion, the ALJ relied on no other opinion to make his finding. However, although the ALJ does not specifically note to which doctor's opinions he gave substantial weight in reaching his decision, the ALJ gave substantial weight to Dr. Vora's opinion regarding the claimant's physical limitations and to Dr. Haney's opinion as to the claimant's mental limitations. Contrary to the claimant's argument, the ALJ need not use any magic words to afford substantial weight to the claimant's treating physicians. *Grady v. Colvin*, No. 8:13-CV-1395-T-17AEP, 2014 WL 4659655, at *8 (M.D. Fla. Sept. 9, 2014). The ALJ afforded substantial weight to Dr. Vora's opinion, who noted the claimant maintained 4/5 strength of the right upper extremity with moderate weakness of right hand grip. Moreover, the ALJ afforded substantial weight to Dr. Honey's assessment of the claimant's mental impairments, who noted several hospital admissions for depression and anxiety. And, the medical record supported both Dr. Vora and Dr. Honey's opinions regarding the claimant's impairments. The objective medical evidence

indicated that the claimant could take care of herself and her daughter's personal needs, cook, go grocery shopping, watch TV, read, pay bills, count change, handle a savings and checking account, talk on the phone, and visit with friends daily. Therefore, the implication is clear: the ALJ afforded substantial evidence to Dr. Vora's and Dr. Haney's assessments when developing his residual functional capacity for the claimant. Accordingly, the ALJ correctly applied the proper legal standard and substantial evidence supports the ALJ's decision.

*Issue 2: The ALJ's Duty to Develop the Record*

The plaintiff next argues the ALJ had a duty to develop a full record. However, the reviewing court has never required an ALJ to develop a fuller record where substantial evidence supports the ALJ's decision. *Holladay*, 848 F.2d at 1209–10; *see also Reeves v. Heckler*, 734 F.2d at 522 n.1. The claimant's medical record, including the claimant's treating physicians, notes the existence of various physical and mental impairments and resulting symptoms. From that record, the ALJ correctly accorded proper weight to each physician's assessment of the claimant's limitations. Therefore, because the medical record supports the ALJ's decision, the ALJ had no duty to develop a fuller record. Requiring the ALJ to develop a fuller record in this case would be akin to beating a dead horse.

## VII. CONCLUSION

For the reasons stated above, this court concludes that the ALJ applied the proper legal standards and that substantial evidence supports his decision. Accordingly, this court AFFIRMS the decision of the Commissioner.

The court will enter a separate Order to that effect simultaneously.

DONE and ORDERED this 16th day of February, 2016.

                                            **KARON OWEN BOWDRE**
                                            CHIEF UNITED STATES DISTRICT JUDGE